# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Submitted April 7, 2020          Decided July 10, 2020

No. 19-7083

CHARLES STRANGE, ON BEHALF OF MICHAEL STRANGE, THEIR SON AND STEPSON, ET AL.,
APPELLANTS

v.

ISLAMIC REPUBLIC OF IRAN, INTEREST SECTION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00435)

———

No. 19-8004

———

IN RE: CHARLES STRANGE, ON BEHALF OF MICHAEL STRANGE, THEIR SON AND STEPSON, ET AL.,
PETITIONERS

———

Petition for Permission to Appeal Under 28 U.S.C. § 1292(b)
from an Interlocutory Order of the United States District
Court for the District of Columbia
(No. 1:14-cv-00435)

———

2

*Larry Klayman* was on the briefs for petitioners/appellants.

*Erica Hashimoto*, Director, and *Marcella Coburn*, Supervising Attorney, Georgetown University Law Center, both appointed by the court, were on the brief as *amicus curiae* in support of the District Court's June 4, 2019 order. With them on the brief were *Emily Clarke* and *John Donnelly*, Student Counsel.

Before: HENDERSON, GRIFFITH and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Interlocutory review is an exception to the final judgment rule and our jurisdiction of such appeals is therefore limited. Before an aggrieved litigant can invoke our interlocutory jurisdiction under 28 U.S.C. § 1292(b), the district court must certify its order for appeal. We may then, in our discretion, permit an appeal only if the litigant files a petition "within ten days after the entry of the [certified] order." *Id.* We have long recognized that section 1292(b)'s filing period is jurisdictional and thus the failure to file timely the required petition precludes us from exercising jurisdiction of the appeal.

Here, the district court certified an order for interlocutory appeal but no petition was filed by section 1292(b)'s deadline. The district court thereafter granted a motion to recertify its order and the litigants filed both a petition for permission to appeal and a notice of appeal within ten days after recertification. We conclude in this consolidated opinion that a district court cannot restart the jurisdictional clock in this

3

manner. Accordingly, and for the reasons that follow, we
dismiss the petition and related appeal for lack of jurisdiction.[1]

**I**

On August 6, 2011, a helicopter carrying thirty United
States servicemembers was shot down by insurgents in
Afghanistan, leaving no survivors. Navy Petty Officers First
Class John Douangdara and Michael Strange and Army Staff
Sergeant Patrick Hamburger were among the Americans killed.
Nearly three years later, their parents and stepparents
(collectively, Parents) brought this suit against those
individuals, governments and state entities (collectively,
Foreign Defendants) the Parents hold responsible. Specifically,
the Parents allege that the Foreign Defendants engaged in
racketeering, *see* 18 U.S.C. §§ 1961 *et seq.*, violated multiple
federal anti-terrorism statutes, *see id.* §§ 2333, 2339, 2339A,
and committed numerous common law torts in connection with
the helicopter attack.

Most of the Foreign Defendants are no longer parties to
this action. The district court concluded that, under the Foreign
Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602 *et seq.*,
it lacked subject-matter jurisdiction of the claims against the
Islamic Republic of Afghanistan and three of its state entities,
*see Strange v. Islamic Republic of Iran*, 320 F. Supp. 3d 92, 99
(D.D.C. 2018), and the Parents voluntarily dismissed Ayatollah
Sayyid Ali Hoseyni Khamenei, former President of Iran
Mahmoud Ahmadinejad and the Army of the Guardians of the
Islamic Revolution, *see* Suppl. App. (S.A.) 61. Four
defendants—the Islamic Republic of Iran, Al Qaeda, the

---

[1]  These cases were considered on the record from the United
States District Court for the District of Columbia and on the briefs
filed by the parties and amicus curiae. *See* FED. R. APP. P. 34(a)(2);
D.C. CIR. R. 34(j).

4

Taliban, and former President of Afghanistan Hamid Karzai[2]—now remain. Iran was properly served pursuant to the FSIA, *see* 28 U.S.C. § 1608(a)(4) (authorizing service "through diplomatic channels"), and Al Qaeda and the Taliban were served by publication, *see* S.A. 63–64. The Parents' efforts to serve Karzai, however, have been less fruitful.

First, they argued that Karzai was served under section 1608(b)(3) of the FSIA by his name being included in documentation delivered to Afghanistan and its state entities. But the suit against Karzai is not governed by the FSIA. Although "it may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself," *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010), the Parents allege that Karzai "was acting in his *unofficial* capacity," S.A. 54, and, as a result, they cannot "rely on the [FSIA]'s service of process and jurisdictional provisions," *Samantar*, 560 U.S. at 324 n.20. Accordingly, the district court held that Karzai must be served pursuant to Federal Rule of Civil Procedure 4(f), which governs service of process on individuals in foreign countries. S.A. 55.

Second, Karzai was purportedly served by publication pursuant to Rule 4(f)(3), which authorizes service "by other means not prohibited by international agreement, *as the court orders*." FED. R. CIV. P. 4(f)(3) (emphasis added). Despite permitting the Parents to serve Al Qaeda and the Taliban by publication, however, the district court "never ordered such service on . . . Karzai." S.A. 55. Moreover, it found the published notice insufficient to inform Karzai that a lawsuit

---

[2] The Parents allege that Karzai "sold the coordinates of [their] sons' location and other classified information," Parents' Br. 5, based on his reported contacts with the Taliban and a history of Afghan soldiers firing on coalition forces, *see id.* at 6.

5

had been filed against him in his individual capacity. *See* S.A. 56–57.

The Parents next attempted to serve Karzai under Rule 4(f)(2), which provides, in relevant part, that "unless prohibited by the foreign country's law," service may be effected "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." FED. R. CIV. P. 4(f)(2)(C)(ii). After the United States Embassy in Afghanistan indicated that documents for Karzai should be delivered to the Presidential Palace in Kabul, the Parents contacted the Embassy of Afghanistan in Washington, D.C. for further guidance. Because many government officials work in the Palace, the Afghan Embassy, attempting to discern the package's intended recipient, asked the Parents to identify the specific individual or office they desired to reach. The Parents declined to answer, however, and were thus provided with the names and telephone numbers of three individuals available for contact, including a "Mr. Kakar."[3] The summons and complaint were subsequently delivered to the Palace and signed for by Kakar. The district court ruled that service had still not been perfected, considering the summons and complaint were not delivered to Karzai personally and the Parents presented no evidence that Kakar was authorized to accept service on Karzai's behalf. S.A. 64–65.

Finally, the Parents requested to serve Karzai by Twitter. The district court exercised its discretion and denied their original motion for leave because, among other things, the Parents had made no attempt to obtain the information necessary to determine whether service by mail had in fact been effective. S.A. 78; *cf. Freedom Watch, Inc. v. Org. of the*

---

[3] "Mr. Kakar" is apparently Muhammad Suleman Kakar, then First Deputy National Security Advisor of Afghanistan. *See* Parents' Br. 23.

6

*Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) ("[W]hether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." (citation and internal quotation marks omitted)). But the court pledged to reconsider the motion if Kakar was not authorized to accept service and the Parents could not otherwise ascertain Karzai's agent. Ex post attempts to resolve the open questions around Kakar fell flat, however, as neither the Afghan Embassy nor Kakar responded to the Parents' inquiries.

Then, on December 21, 2018, without the district court's approval, the Parents' counsel attempted to contact Karzai on Twitter. The body of the tweet simply stated: "Strange v. Islamic Republic of Iran, et al. @KarzaiH." App. 62. By "mentioning" Karzai's username, the Parents ensured that his Twitter account would receive a notification of the message. The tweet also contained a partial screenshot of the summons but the picture was cropped in such a way that only one sentence—"A lawsuit has been filed against you"—was fully visible. App. 62. Only by clicking on the image, which was in fact an embedded link to the Parents' counsel's website, could Karzai view the summons and complaint in their entirety.

Nearly five months later, the Parents renewed their request to serve Karzai by Twitter. The district court denied the motion without prejudice. S.A. 101. Ultimately, "the [c]ourt [wa]s not convinced that Twitter would be reasonably likely to give . . . Karzai notice of this lawsuit." S.A. 97–98 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections")). To prove that "Karzai has a strong presence on Twitter and tweets almost daily to communicate with his

7

audience," Parents' Br. 21, the Parents catalogued his Twitter activity over a ten-day period in December 2018. But they failed to reconcile their premise—that Karzai saw the December 21 tweet and received notice of the pending lawsuit—with the fact that Karzai, like many public figures, does not manage his own Twitter account. Although Karzai's account makes plain this distinction, advising that "[p]ersonal tweets are signed – HK," Hamid Karzai (@KarzaiH), TWITTER, www.twitter.com/KarzaiH (last visited July 1, 2020), the Parents never identified which, if any, of the tweets they offered as evidence were sent by Karzai personally. The district court conducted its own review and concluded that Karzai had a "limited personal presence on Twitter," having discovered only *one* of the twenty-two tweets sent from his account in May 2019 was signed "HK." S.A. 98.

The district court noted additional shortcomings of the proposed means of service. First, as a public figure, Karzai was often mentioned by other Twitter users and was therefore unlikely to notice a single tweet sent from an unfamiliar account.[4] The substance of the tweet was also "somewhat confusing." S.A. 99. The partial screenshot made clear that the summons was addressed to Karzai at the Afghan Embassy in Washington, D.C. but, as Karzai had no presence at the embassy, it was not obvious that the notice was directed to him in a personal capacity. And although this confusion could have been remedied by following the link to the Parents' counsel's website, basic principles of cybersecurity advise that no one, let alone a world leader, should click links sent by strangers. *See* S.A. 99. Finally, the court distinguished the Parents' claimed legal support. In the nonbinding cases they cited, "social media platforms were used, if at all, only as a

---

[4]    In May 2019, for example, Karzai's account received approximately 165 tweets within a seven-day period. S.A. 98.

8

*supplement* to service by email or other means," whereas the Parents proposed to serve Karzai "by Twitter alone." S.A. 99. The district court therefore declined, at that time, to allow the Parents to serve Karzai by Twitter. S.A. 96.

The Parents moved to amend the court's order by certifying the Twitter-service issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Notwithstanding "the general rule that appellate review must await final judgment," *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 716 (2019), if a district court determines that one of its orders "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and it says so in the order, the adversely affected litigant can seek immediate review, 28 U.S.C. § 1292(b). Access to an appellate tribunal is not guaranteed, however. Rather, the court of appeals with jurisdiction of a direct appeal may, "in its discretion, permit an appeal . . . if application is made to it within ten days after the entry of the order." *Id.* Federal Rule of Appellate Procedure 5, which implements section 1292(b), clarifies that, if the certification is not included in the original order and is thereafter added by amendment, "the time to petition runs from entry of the amended order." FED. R. APP. P. 5(a)(3).

The district court found the statutory preconditions satisfied and granted the Parents' motion on July 12, 2019. *See* S.A. 111. The Parents thus had until July 22, 2019—ten days after the court amended its Twitter order to add the requested certification—to petition for review. They failed to do so by the deadline. Instead, on July 23, the Parents moved for an extension of time to petition and, in the alternative, recertification of the order. Although the district court recognized that it could not extend section 1292(b)'s

9

jurisdictional filing deadline, it nevertheless granted recertification on July 30, 2019, after concluding that the "original justifications for granting a certification of appeal remain valid." S.A. 121.

Six days later, on August 5, the Parents filed a notice of appeal in district court. The notice was transmitted to this Court on August 9, the same day the Parents petitioned for permission to appeal. Two cases were thus opened: No. 19-7083 involves the notice of appeal and No. 19-8004 covers the petition for permission to appeal. Notwithstanding this docketing treatment, the two cases are one and the same. Because the Parents invoke only our interlocutory jurisdiction, we have jurisdiction of the appeal in No. 19-7083 only if we grant the petition for permission to appeal in No. 19-8004. In other words, our jurisdiction of the related cases turns on whether recertification of the district court's order cured the Parents' failure to timely file a petition within ten days of the initial certification order. The Court thus referred the petition in No. 19-8004 to the same merits panel as the appeal in No. 19-7083, appointed counsel as amicus curiae in support of the district court's Twitter order and directed the parties to address the jurisdictional question in their briefs.[5]

## II

The Parents neither challenge the jurisdictional nature of section 1292(b)'s filing period nor argue that they applied to this Court "within ten days after the entry of" the district court's original certification order. 28 U.S.C. § 1292(b). Ordinarily, "[f]ailure to file the petition for permission to appeal within the [ten]-day period . . . deprives us of jurisdiction over the appeal." *Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192, 1194 (D.C.

---

[5] We thank amicus for the outstanding briefing and have found it to be of great assistance.

10

Cir. 2000) (per curiam). This straightforward conclusion is complicated, however, by the fact that the district court recertified its order for interlocutory appeal and the Parents thereafter filed a petition within ten days. We have not previously addressed whether a district court can "restart[] the § 1292(b) clock" in this manner. *See Kennedy v. Bowser*, 843 F.3d 529, 538 (D.C. Cir. 2016) (Griffith, J., concurring) (citation omitted). The Parents contend that "[t]he jurisdictional nature of [section 1292(b)'s] time limitation . . . is circumvented when a district court recertifies its prior certification order," Parents' Br. 12, and that we therefore have jurisdiction of their interlocutory appeal. We disagree.

The Parents primarily rely on *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) (per curiam), but, simply put, "*Baldwin County* is a puzzling case," *Groves v. United States*, 941 F.3d 315, 322 n.3 (7th Cir. 2019). In *Baldwin County*, the district court had recertified its order nine months after section 1292(b)'s filing period had expired, thereby "permitting what would otherwise be a time-barred interlocutory appeal." 466 U.S. at 162 (Stevens, J., dissenting). Yet this jurisdictional question was addressed only by Justice Stevens in his dissenting opinion, joined by Justices Brennan and Marshall. Despite recognizing that the "[ten]-day time limit . . . is mandatory and jurisdictional," *id.* at 161, Justice Stevens concluded with little explanation "that interlocutory appeals in these circumstances should be permitted," *id.* at 162.[6] This was so, he continued, "notwithstanding the fact that this view essentially renders the [ten]-day time limitation, if not

---

[6] Justice Stevens was "persuaded by the view, supported by the commentators," that section 1292(b)'s filing deadline begins anew after recertification. 466 U.S. at 162 (Stevens, J., dissenting). But he nowhere details why his view is correct.

a nullity, essentially within the discretion of a district court to extend at will." *Id.*

Contrary to the Parents' suggestion, "a dissenting Supreme Court opinion is not binding precedent" because it "does not tell us how a majority of the Court would decide" the question. *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996). And in *Baldwin County*, "[t]he majority didn't address the question at all, so it is unclear whether it viewed the procedural posture differently or thought that interlocutory jurisdiction was proper." *Groves*, 941 F.3d at 322 n.3. Indeed, not only is the per curiam opinion silent on the effect of recertification, it does not even mention section 1292(b). Inasmuch as the majority responded to other arguments raised by Justice Stevens, *see, e.g.*, 466 U.S. at 150 n.4 (majority opinion), the complete lack of discussion on this point is unusual, especially given the "conflict in the Circuits on this jurisdictional question," *id.* at 161 (Stevens, J., dissenting).

The Parents nevertheless maintain that *Baldwin County* "implicitly addressed recertification by taking the appeal." Parents' Reply Br. 3. Assuming *arguendo* that the Parents are correct, the majority's silence does not transform the dissent's conclusion into a binding holding. That is, "[e]ven if the majority approved recertification sub silentio, . . . its assumption would be a 'drive-by jurisdictional ruling[]' lacking precedential effect." *Groves*, 941 F.3d at 322 n.3 (alteration in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)). In *Steel Co.*, the Supreme Court disclaimed reliance on the supposed jurisdictional ruling in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987), because, among other things, the *Gwaltney* Court was apparently unaware "that anything *turned upon* whether the existence of" the cause of action at issue "was technically jurisdictional" and, instead, its "jurisdictional

12

character . . . was assumed without discussion by the Court," *Steel Co.*, 523 U.S. at 91. Likewise, in *Baldwin County*, section 1292(b)'s "jurisdictional limitation . . . simply escape[d] the attention of the Court." 466 U.S. at 152–53 (Stevens, J., dissenting); *see also Marisol A. ex rel. Forbes v. Giuliani*, 104 F.3d 524, 527 (2d Cir. 1996) (*Baldwin County* did not "squarely address[] . . . whether a circuit court has jurisdiction to consider a § 1292(b) petition in this situation").

In sum, we are not bound by a jurisdictional ruling that the High Court majority declined to hint at, even in passing. *See In re Navy Chaplaincy*, 534 F.3d 756, 764 (D.C. Cir. 2008) ("It is a well-established rule that 'cases in which jurisdiction is assumed *sub silentio* are not binding authority for the proposition that jurisdiction exists.'" (quoting *John Doe, Inc. v. DEA*, 484 F.3d 561, 569 n.5 (D.C. Cir. 2007))). Thus, although the Parents cite *Baldwin County* "as implicit support for the district court's power to recertify an order, the issue bears further exploration in view of the majority's silence." *Marisol A.*, 104 F.3d at 527.

The Parents correctly note that most circuits to consider the issue have held that recertification resets the jurisdictional clock. *See Groves*, 941 F.3d at 321–22 (compiling cases). This "precedent, while not binding, is 'persuasive authority that should not be completely ignored.'" *Schnitzer v. Harvey*, 389 F.3d 200, 203 (D.C. Cir. 2004) (quoting *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1490 n.17 (D.C. Cir. 1984)). Despite reaching the same outcome, these courts approach the jurisdictional question in myriad ways. For example, the weight afforded *Baldwin County* varies considerably. Like the Parents, the Fourth Circuit views *Baldwin County* as endorsing recertification. *See Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 866–67 (4th Cir. 2001). Others are more skeptical, *see Marisol A.*, 104 F.3d at 527, and some do not

13

reference *Baldwin County* at all, *see generally In re Benny*, 812 F.2d 1133 (9th Cir. 1987).

Our sister circuits have also articulated different criteria for determining when it is appropriate to accept a recertified order for interlocutory appeal. The Fifth Circuit permits the district court to "reenter the interlocutory order and thus trigger a new ten-day period" if "the previous justification for a certification continues to exist." *Aparicio v. Swan Lake*, 643 F.2d 1109, 1112 (5th Cir. 1981). Most, however, employ some form of equitable balancing. *See, e.g.*, *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (recertification is proper "to avoid an injustice to a party caused by the inadvertent acts of the district court"); *Safety-Kleen*, 274 F.3d at 867 ("[T]he district court should consider whether the appellant can show excusable neglect" and, if so, "whether the appellee can show sufficient prejudice to warrant a denial of recertification."); *Marisol A.*, 104 F.3d at 528 (appellate court should consider "the length of the delay," "the reasons given for failing to timely file," "and any prejudice to the appellee from the delay"); *In re Benny*, 812 F.2d at 1137 ("[T]he court of appeals may exercise jurisdiction over the appeal if it determines that jurisdiction . . . would serve judicial efficiency.").

Although these out-of-circuit cases take divergent paths, they have one thing in common—all predate *Bowles v. Russell*, 551 U.S. 205 (2007), which "introduced the [Supreme] Court's renewed emphasis on the federal courts' lack of authority to read equitable exceptions into fixed statutory deadlines," *Groves*, 941 F.3d at 321. In *Bowles*, a criminal defendant failed to timely file a notice of appeal and moved to reopen the filing period pursuant to Federal Rule of Appellate Procedure 4(a)(6) and 28 U.S.C. § 2107(c), both of which, under certain conditions, authorize the district court to extend the deadline for a period of fourteen days. *See* 551 U.S. at 207. The district

14

court granted the motion but "inexplicably" provided seventeen days to file; the defendant thereafter filed his notice of appeal outside the fourteen-day statutory period. *Id.* The Supreme Court affirmed that "time limits for filing a notice of appeal are jurisdictional in nature" and, accordingly, the "untimely notice—even though filed in reliance upon a District Court's order—deprived the Court of Appeals of jurisdiction." *Id.* at 206–07.

Only one circuit court has addressed the recertification question post-*Bowles*. The Seventh Circuit had previously held that interlocutory jurisdiction of a recertified order is proper if equitable considerations favor an appeal even after the statutory deadline has expired. *See Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 246–47 (7th Cir. 1981). In *Groves*, however, the court expressly overruled *Nuclear Engineering Co.* as "inconsistent with the [Supreme] Court's approach to fixed filing deadlines." 941 F.3d at 322. We find the reasoning in *Groves* persuasive and join the Seventh Circuit in holding that a district court may not utilize recertification to extend section 1292(b)'s ten-day deadline.

To start, we emphasize that "section 1292(b)'s filing period is jurisdictional," as "all of the circuits to address the issue have concluded." *Carr Park*, 229 F.3d at 1194; *see also Bowles*, 551 U.S. at 209 ("[The Supreme] Court has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982) (per curiam)).[7]

---

[7]    *Bowles*'s holding that statutory time limits are jurisdictional implicates statutes like 28 U.S.C. § 1292, which "concern[] an appeal from one court to another court." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011). "The 'century's worth of precedent and practice in American courts' on which *Bowles* relied involved appeals of that type" and, thus, the Supreme Court "did not

15

"Jurisdictional treatment of statutory time limits makes good sense. . . . Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles*, 551 U.S. at 212–13.

The Congress expressly delineated the "conditions" under which we may accept a petition for permission to appeal. Under section 1292(b), the ten-day clock begins to run when the district court first certifies its order for interlocutory appeal.[8] And because a "filing deadline prescribed by statute" is jurisdictional, if ten days elapse and no petition has been filed, "that . . . necessitates dismissal of the appeal." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 16 (2017); *see Groves*, 941 F.3d at 324 ("If the application is not made within ten days, the order is no longer appealable."). We are without power "to create for ourselves otherwise nonexistent jurisdiction, in a fashion that cannot be grounded in the statutory text," *Nat'l Black Media Coal. v. FCC*, 760 F.2d 1297, 1299 (D.C. Cir. 1985) (emphasis omitted), and, here, "[t]he statute does not contemplate that the order's appealability can be revived by a new certification," *Groves*, 941 F.3d at 324.

Indeed, "no exception to the time for filing is set out in the statute," *Carr Park*, 229 F.3d at 1194, even though the Congress plainly knows how to authorize filing extensions and has done so elsewhere. A district court may, for example,

---

hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional." *Id.* (quoting *Bowles*, 551 U.S. at 209 n.2).

[8] This is true whether the certification is included in the original order or added by amendment. Either way, "the clock does not start until the litigant is actually authorized to file a petition." *Groves*, 941 F.3d at 319.

16

extend the time for filing a notice of appeal "upon a showing of excusable neglect or good cause." 28 U.S.C. § 2107(c). Yet "no statute gives [it] similar authority to extend the time for filing a petition for permission to appeal." *Groves*, 941 F.3d at 324 (emphasis omitted). Likewise, "the plain language of the Federal Rules precludes us from enlarging the statutory time for filing." *Carr Park*, 229 F.3d at 1194; *see Groves*, 941 F.3d at 323 ("If a litigant asked us to toll the clock, there is no question that we would have to refuse."). Federal Rule of Appellate Procedure 5 makes clear that "[t]he petition must be filed within the time specified by the statute," FED. R. APP. P. 5(a)(2), "[a]nd Rule 26(b)(1) reinforces that limit by expressly prohibiting courts of appeals from extending the time to petition for permission to appeal," *Groves*, 941 F.3d at 323.[9] Simply put, the Congress "d[id] not authorize either district courts or the courts of appeals to extend § 1292(b)'s deadline for any reason," *Groves*, 941 F.3d at 321; *see also In re City of Memphis*, 293 F.3d at 348 ("Neither the district court nor the court of appeals can extend the [ten]-day period.").

Many of our sister circuits nevertheless allow a district court to "*effectively extend* the time for filing a petition . . . by recertifying its order." *In re Benny*, 812 F.2d at 1136 (emphasis added). In accepting otherwise untimely interlocutory appeals, these circuits consider various equitable factors, such as the length of the delay, *see Marisol A.*, 104 F.3d at 528, excusable neglect and unfair prejudice, *see Safety-Kleen, Inc.*, 274 F.3d at 867, and judicial efficiency, *see In re Benny*, 812 F.2d at 1137. But regardless whether these approaches were correct

---

[9] The Parents' reliance on Rule 4(a)(5), which authorizes the district court to extend the time to file a notice of appeal in appeals as of right, is therefore misplaced. Rule 26(b)(1) plainly states that "the court may not extend the time to file . . . a petition for permission to appeal." It is clear, then, that Rule 4 does not apply to a discretionary appeal like this one.

17

when first articulated, the Supreme Court made clear in *Bowles* that federal courts "ha[ve] no authority to create equitable exceptions to jurisdictional requirements." 551 U.S. at 214.[10] Put differently, a fixed filing period "cannot be enlarged just because . . . [a] court in its discretion thinks it should be enlarged," *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211 (1952), notwithstanding the equitable balance tips in favor of accepting a tardy petition, *cf. Nat'l Black Media Coal.*, 760 F.2d at 1299 ("[W]e are bound by the terms of our jurisdictional grant.").

The Parents' remaining arguments are unavailing. First, they maintain that the question before us "is not about enlarging time, reopening a filing period, . . . or whether a district court judge has the authority to extend time to file an appeal" but, rather, is about whether recertification "moot[s]" section 1292(b)'s ten-day deadline. Parents' Reply Br. 1. Granted, the act of recertifying an order—or vacating and reentering it—is distinct from *expressly* providing more time than the statute allows, as was the case in *Bowles*. But courts cannot "moot" a jurisdictional requirement any more than they can extend or excuse it. If the Parents had moved for an extension of time within the ten-day period, the district court would have been powerless to extend the deadline or excuse compliance on equitable grounds. But the Parents have achieved the same result by letting the deadline expire and then obtaining a recertified order, rendering section 1292(b)'s nondiscretionary time limitation "a nullity" or, at the very least,

---

[10]    The Supreme Court consequently overruled the "unique circumstances" doctrine—an equitable doctrine the Court had "applied . . . only once in the last half century"—"to the extent [it] purport[s] to authorize an exception to a jurisdictional rule." *Bowles*, 551 U.S. at 214.

18

"within the discretion of a district court." *Baldwin Cty.*, 466 U.S. at 162 (Stevens, J., dissenting).

"[W]hen a jurisdictional statute sets a firm deadline," however, "courts have no authority to extend it." *Groves*, 941 F.3d at 323 (citing *Bowles*, 551 U.S. at 209). Accepting the Parents' position would elevate form over function by endorsing "the fiction that recertifying an order isn't the same thing as granting more time." *Id.* at 324. In fact, it is evident from the Parents' briefs that the line they draw between a recertified order and an order granting more time is illusory. They concededly "sought an extension" from the district court, Parents' Br. 15, but persist in arguing that the recertified order "did not extend the time . . . to file," Parents' Reply Br. 6. Their attempt to characterize the order any differently is simply a veneer, incapable of obscuring the fact that the recertified order plainly extends the filing period beyond ten days. Substance, not name or label, is what matters here. *Cf.* GERTRUDE STEIN, *Sacred Emily*, *in* GEOGRAPHY AND PLAYS 178, 187 (Univ. of Wis. Press 1993) (1922) ("Rose is a rose is a rose is a rose."). We therefore decline their invitation to "permit[] district courts to do indirectly what they cannot do directly: give litigants more time to file a petition in the court of appeals." *Groves*, 941 F.3d at 321; *cf. Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 435 (3d Cir. 1958) ("[T]he conditions precedent to the granting . . . of permission to appeal . . . are to be strictly construed and applied.").

Our conclusion is consistent with the treatment of filing periods in analogous contexts. "[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought." *Minneapolis-Honeywell Regulator Co.*, 344 U.S. at 211. And for interlocutory appeals under Rule 23(f), the filing period "runs from the order granting or denying class

19

certification" and "[a] later order that does not change the status quo will not revive the . . . time limit." *In re DC Water & Sewer Auth.*, 561 F.3d 494, 496 (D.C. Cir. 2009) (quoting *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 193 (3d Cir. 2008)).[11] Section 1292(b) requires the filing of a petition for permission to appeal within ten days and a court cannot give litigants more time merely by recertifying or reentering its original certification order.[12]

The Parents also point out that they sought recertification only one day after the filing period expired. But a prompt attempt to rectify the mistake does not negate the fact that "timely filing . . . is a jurisdictional requirement." *Bowles*, 551 U.S. at 214. "Deadlines are by nature arbitrary, which can make dismissal for failure to comply with them seem particularly harsh." *Groves*, 941 F.3d at 323. The filing period at issue in

---

[11]  Although Rule 23(f) is a "nonjurisdictional claim-processing rule," *Nutraceutical Corp.*, 139 S. Ct. at 714, its deadline "may not be extended[,] . . . even where good cause for equitable tolling might otherwise exist," *id.* at 715.

[12]  Here, the district court's recertified order—which simply affirmed "that the original justifications for granting a certification of appeal remain valid," S.A. 121—did not "revise[]" its original order in a "[]material way," *Minneapolis-Honeywell Regulator Co.*, 344 U.S. at 211, or "change the status quo," *In re DC Water & Sewer Auth.*, 561 F.3d at 496. We therefore "do[] not address whether or to what extent substantive reconsideration of a previously certified order might allow recertification to restart the clock." *Groves*, 941 F.3d at 325 n.6; *see Minneapolis-Honeywell Regulator Co.*, 344 U.S. at 211–12 ("Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken . . . begin to run anew." (footnotes omitted)); *cf. Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 700 (D.C. Cir. 1994) ("A later order that revises an earlier one only in part preserves the finality of the unrevised portions.").

20

*Bowles*, for example, was not subject to equitable modification even though the district court's error caused the defendant to file a mere two days late. 551 U.S. at 207. Noting the "severe consequences" of its approach to jurisdictional limitations, the Supreme Court acknowledged that a few months earlier the Clerk of Court "refused to accept a petition for certiorari . . . because it had been filed one day late" and, as a result, the petitioner "was executed . . . without any Member of th[e] Court having even seen his petition." *Id.* at 212 n.4. If jurisdictional boundaries do not yield under the weight of a life-or-death decision, "*no* result justifies our intervening where we have not been granted the power to do so." *Groves*, 941 F.3d at 323 (citing *Steel Co.*, 523 U.S. at 101–02).

This principle is especially pertinent to an interlocutory appeal, which constitutes an exception to "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Dig. Equip. Corp. v. Desktop Dir., Inc.*, 511 U.S. 863, 868 (1994) (citation omitted). In view of "the usual benefits of deferring appeal until litigation concludes," *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 107 (2009), the limitations on interlocutory appeals are "purposefully unforgiving," *Nutraceutical Corp.*, 139 S. Ct. at 716. Strictly policing interlocutory jurisdiction in this manner is unlikely to penalize late-filing litigants permanently. Whereas "a litigant who loses the opportunity to appeal a final judgment forever loses the ability to appeal, . . . a litigant who loses the opportunity to file an interlocutory appeal has another chance later." *Groves*, 941 U.S. at 324; *see Consarc Corp.*, 27 F.3d at 700 ("[T]he question is simply whether the order will be considered then or now.").

Indeed, our decision does not leave the Parents without options. They recognize that "many of the[] issues" raised in this appeal could "be reviewed . . . after final judgment,"

21

notwithstanding "it would be much more difficult" if Karzai is "dismissed from this case." Parents' Br. 12. And the failure to perfect service by Twitter does not ensure Karzai's dismissal. The Parents can still "seek leave to serve [Karzai] via publication," S.A. 106, or can resort to another service method with the district court's approval.

"If rigorous rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits." *Bowles*, 551 U.S. at 214. Until then, filing a petition for permission to appeal outside section 1292(b)'s ten-day filing period is an "error . . . of jurisdictional magnitude," *Bowles*, 551 U.S. at 213, that mandates dismissal, *see id.* ("[W]hen an 'appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction.'" (quoting *United States v. Curry*, 47 U.S. 106, 113 (1848))). A litigant cannot elude the strictures of section 1292(b) and "make an end-run around this limit," *Groves*, 941 F.3d at 324, simply by obtaining recertification of an order for interlocutory appeal.

For the foregoing reasons, we dismiss the petition for permission to appeal in No. 19-8004 and the related appeal in No. 19-7083.

*So ordered.*